Johnson, J.
delivered the opinion of the Court.
The gift of Hannah to the defendant’s wife, and of Charlotte to the plaintiff himself, by their father-in-law, William Sprag-gins, were clearly and satisfactorily proved ; as was also the plaintiff’s possession of Charlotte for fourteen or fifteen years before he delivered her up to the defendant. From these facts it follows, that in respect to their several gifts, the property in Charlotte and her child, the slaves in dispute, was in the defendant ; but that the plaintiff’s long and undisputed possession was, under the statute of limitations, a bar to his right of recovery : and the only debatable ground is, whether the surrender and delivery of them, made by the plaintiff to the defendant, is a bar to his claim. The ground taken by his counsel is, that it was made under circumstances amounting to duress, and therefore deprived him of no right.
That a contract, extorted by means of duress of the person, imposes no obligation on the party to be bound, and deprives him of no right, is a proposition which no one will be disposed to controvert: and it would seem, according to the cases of Collins v. Westbury and Brown, 2 Bay, 211, and Sasportas v. Jennings and Woodrop, 1 Id. 470, which have been much relied on, on account of their supposed analogy to this ease, that under peculiar circumstances of hardship, duress of goods will be a *87 good ground to avoid a bond given for their release. But I apprehend that a contract is not necessarily void, because even the person of the party to be bound is under restraint. One who is lawfully imprisoned may enter into a contract to obtain his discharge, or he will, in general, be bound by any contract he may make: and so with respect to duress of his goods. Contracts made with respect to them, are not necessarily void; for they may be based on a good and valuable consideration. And I take it, that it is only in those cases where the arrest is without sufficient cause, ox lawful authority, or where an improper use has been made of it, and an advantage gained, that the party can avoid his contract; and this appears to have been the principle on which the cases above cited were decided.
The arrest in this case was made under lawful authority, in pursuance of an apparently well founded cause of action, and by an officer duly qualified ; and the question is, whether the defendant used the occasion to extort an unjust and uneonsionable contract from the plaintiff. The allegation on the part of the plantiff is, that the defendant availed himself of the accidental circumstance of his going into an adjoining district, to make the arrest at a place, distant from that in which the plaintiff’s friends resided, at a time when all his preparations had been made to remove to a distant country ; and that he had no alternative but to surrender his property, or go to gaol. These are, however, highly drawn colourings of the facts. It is true, that the arrest was made in an adjoining district, and out of the immediate neighborhood of the plaintiff’s residence. It was not, however, without the reach of his acquaintance; but on the contrary, was at the house of his brother-i 11-law, at which his particular fríen ds were expected to arrive in the course of a few hours. Every indulgence, too, which this state of things permitted, was afforded to him by the deputy sheriff who arrested him ; and the circumstance, that he had made arrangements to remove from the State without paying the defendant what he owed him, or delivering up the slaves which he claimed, rendered further delay on the part of the defendant a matter of hazard. A prudent man, if he had intended to assert his rights, would not have delayed much longer. So much for the circumstances, let us now examine the contract itself.
*88 There is no complaint so far as the contract went to discharge ^)e ^e^ts> which plaintiff owed to defendant; they are admittedto ^ave been justly due. It will be recollected, that the slaves in dispute did belong to the defendant, and that he had only lost , . , . . , , , , ,, . his remedy to recover them by too much delay, probably in respect to his father-in-law, William Spraggins, who had given them to the plaintiff. Was there any thing unjust, unreasonable, or unconscionable, in'his seeking to recover them by due course of law % Could he know that the plaintiff would consent to avail himself of the lapse of time, which some men would have regarded as unwarantable ? Or was the surrender made by the plaintiff, and the acceptance by the defendant, under these circumstances, such as to induce a belief, that the latter acted from necessity, and that the former used the occasion to extort an unjust contract from him 1 I think not.
Much reliance has been placed on the circumstance that the plaintiff avowed his determination to pursue his right to the slaves, notwithstanding that he had consented to give them up to the defendant. But that'of itself could not avail him, any more than if he had sold them for a valuable consideration, and at the same time, declared that the purchaser should not have them. It can, at most, only amount to a circumstance in aid of the proof of duress, and is, I think, fully balanced by the fact, that he subsequently, and before he delivered the negro, avowed, that the defendant’s having taken one of his children to bring up was a motive to the compromise.
I am, therefore, of opinion, that the motion for a new trial must prevail.
Motion granted.